2024 IL App (1st) 232015-U

Fourth Division
Filed January 11, 2024

No. 1-23-2015B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

# IN THE
## APPELLATE COURT OF ILLINOIS
## FIRST DISTRICT

_____

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>    Plaintiff-Appellee,<br><br>*v.*<br><br>STEVE CECIL,<br><br>    Defendant-Appellant. | Appeal from the<br>Circuit Court of Cook County<br><br>No. 23 CR 08573<br><br>Honorable Shelley Sutker-Dermer,<br>Judge, presiding. |

_____

JUSTICE OCASIO III delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

## ORDER

¶ 1  *Held:*  We affirm the circuit court's order granting the State's petition for pretrial detention.

¶ 2  Defendant, Steve Cecil (Cecil), appeals the circuit court's order granting the State's petition for pretrial detention under article 110 of the Code of Criminal Procedure of 1963 (Code). 725 ILCS 5/art. 110 (West Supp. 2023). For the following reasons, we affirm.

¶ 3  BACKGROUND

¶ 4  On July 9, 2023, Cecil was arrested and charged with unlawful use or possession of a weapon by a felon and aggravated unlawful use of a weapon. At that time, the circuit court ordered Cecil to be held until he could post the bond of $50,000 "D," meaning he would need to post $5,000 to be released.

¶ 5    On October 16, 2023, after the supreme court lifted the stay of pretrial release provisions in *Rowe v. Raoul*, 2023 IL 129248, Cecil orally requested pretrial release pursuant to Section 110-2 of the Code. The State filed a verified petition for a pretrial detention hearing pursuant to sections 110-2 and 110-6.1 of the Code.

¶ 6    At Cecil's detention hearing, the State proffered the facts of the underlying offense:

> "[T]he defendant was observed walking with a shotgun by two witnesses in the area of 4409 West Montana Street, and this occurred on July 9th of 2023 at approximately 12:26 a.m. The witnesses observed the defendant place it under a vehicle. Officers of the Chicago Police Department were called to that area. They recovered a 12-guage shotgun where the witnesses had observed the defendant place it. When they stopped the defendant and searched him, they recovered a 12-guage shotgun shell in his pocket."

The police report in the record describes the firearm as a "Springfield, H67, pump action shotgun with 12 inch barrel." The State described Cecil's criminal history:

> "He has a 2018 aggravated battery public place, Class 3, he received four years IDOC; in 2011 a Class 4 PCS, one-year IDOC; a 2007 Class 4 PCS, one-year IDOC; a 2006 Class 4 PCS, 18 months IDOC; a 2005 aggravated 6-303, it was a Class 4, one-year probation and a 1998 manufacture/delivery of a controlled substance, six-years IDOC."

The State indicated Cecil's Public Safety Assessment stated Cecil's "[n]ew criminal activity is a four and failure to appear three." See 725 ILCS 5/110-6.4 (West Supp. 2023) (providing that the court may utilize statewide risk assessment tools in evaluating the likelihood of a defendant's appearances at future proceedings or if defendant poses a real and present threat). The State further alerted the circuit court that Cecil was on probation for a conviction of aggravated fleeing and eluding at the time of this offense. Cecil was being held no bail for a violation of that probation, which was pending in another courthouse. The State described the facts underlying that prior conviction:

> "[T]he facts are that on September 21st of 2020 defendant was the driver of a white 1996 Pontiac Grand Prix. He had a passenger in the vehicle with him. Officers observed the vehicle turning

without signaling, this happened in Franklin Park. They activated emergency equipment and curbed the vehicle. Officers were in full uniform. They approached and observed the defendant in the driver's seat. They engaged the defendant in a conversation. He would not comply with their command, and he then told the officers bye and put the car in drive and drove off. Officers pursued in their vehicle. They drove down Mannheim traveling 83 miles an hour in a forty-mile-an-hour zone. He made an improper U turn on Mannheim then proceeding south and weaving between lanes. He drove into oncoming traffic and ran a red light at Belmont. He then was traveling—he was observed to be traveling at 76 miles per hour in a 35-mile-per-hour zone. His vehicle began to spark and smoke. The officers were able to surround his vehicle and attempted to get him to pull over. He then sped up and rear ended squad car causing rear-end damage. He then turned his car into a second squad car on the side of him causing damage to that vehicle as well. This crash disabled the defendant's vehicle.

Officers had both occupants exit. His passenger was placed into custody for a gun charge. They had to reach in the car and pull the defendant out. Once he was out, he refused to listen to verbal commands and resisted arrest. He would not put his hands behind his back, and he stiffened up his body.

While taking him into custody, one of the officers hit his head on the ground, and he suffered pain to his head, dizziness and nausea and went to the hospital, and the two squad cars were damaged, one was no longer drivable."

¶ 7    At the conclusion of the detention hearing, the circuit court granted the State's petition for pretrial detention and ruled as follows:

"[T]his Court finds that the proof is evident and the presumption – or the presumption is great the defendant committed the alleged offense of unlawful use of weapon by felon; that the defendant poses a real and present danger or threat to the safety of any person or persons in the community based on the facts of this case, which is the defendant was on the street with a shotgun and it was viewed by witnesses and later a bullet fitting that gun was recovered from the defendant, and as to whether any conditions can mitigate the real and present safety of any person or persons in the community, I will say that based on the facts in the fleeing and eluding and the fact that he has a violation of probation that is set at no bail on the former

system that it would be—that the State has shown by clear and convincing evidence that the proof is evident, the presumption is great and no condition or conditions set can mitigate the defendant's willful flight. So the defendant will be detained and remanded to the custody of the Cook County Sheriff's pending the trial of this case."

¶ 8    A written order reflecting the circuit court's findings was entered the same day. In that order, the circuit court found that the State had shown by clear and convincing evidence that the proof was evident or the presumption is great that Cecil had committed an offense eligible for detention, unlawful use of a weapon by a felon., he poses a real and present threat to the safety of any person or persons or the community based on specific articulable facts of the case and no condition or combination of conditions can mitigate the threat to safety posed by Cecil and mitigate Cecil's willful flight. Cecil timely appealed.

¶ 9                                    ANALYSIS

¶ 10    Under the newly amended provisions of article 110, "[a]ll persons charged with an offense shall be eligible for pretrial release before conviction." 725 ILCS 5/110-2(a) (West Supp. 2023). In some circumstances, the court may detain a person accused of a crime if the State proves by clear and convincing evidence that (1) the proof is evident or the presumption great that the defendant has committed the underlying offense, (2) the defendant's pretrial release poses a real and present threat to the safety of the community, and (3) no condition or combination of conditions could mitigate risk to safety to the community or the defendant's willful flight. *Id.* § 110-6.1(e).

¶ 11    As for the standard of review, some courts have utilized the manifest weight of the evidence standard. See *People v. Rodriguez*, 2023 Il App (3d) 230450, ¶ 8; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12. Others have applied an abuse of discretion standard as that was the standard utilized under the prior regime regarding bond hearings and appeals therefrom. See *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11; *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9. For our purposes, under either standard, the result in this case is the same.

¶ 12    Cecil does not challenge that he has been charged with a detainable offense, and we agree. 725 ILCS 5/110-6.1(e)(1) (West Supp. 2023). Instead, he challenges whether the State has met its burden, by clear and convincing evidence, that he poses a real and present threat to the safety of any person, persons, or to the community, that no condition or combination of conditions would mitigate the risk he poses, and rejects that either the proof is evident, or the presumption is great that he committed the offense, based on the specific articulable facts of the case. 725 ILCS 5/110-6.1(e)(2), (3) (West Supp. 2023). Specifically, Cecil asserts that the State never alleged that he poses a threat to anyone including the community and that the circuit court erred in finding he violated the willful flight standard when the State did not allege willful flight.

¶ 13    Cecil argues that the two Class 2 felonies he is accused of are "purely status and licensure violations," suggesting that the safety standards have not been satisfied by the State. Cecil also highlights the burden on the State is clear and convincing evidence. Finally, Cecil contends the State's failure to articulate its case under the Act required the circuit court to focus on what conditions or combination of conditions might impose to mitigate any potential risk from Cecil's pretrial release. Notwithstanding, this Court will neither disturb nor substitute the trial court's factual and credibility findings with our own. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 14    Here, in its oral and written rulings, the circuit court found the proof was evident and the presumption was great that Cecil committed the unlawful use of a weapon by a felon. Further, Cecil posed a real and present threat to the safety of the community as he was in the street with a shotgun, was observed by two witnesses, and found with a shotgun shell on his person. The circuit court properly concluded that no conditions would mitigate the threat to safety in that Cecil committed the offense while on probation on a charge of aggravated fleeing and eluding the police. The proffer as to that charge showed Cecil eluded the police during a high-speed car chase, disregarded police directions and instructions, and jeopardized the safety of the public. While the State neither alleged nor argued that Cecil was a flight risk, at the hearing the State proffered the facts of Cecil's aggravated fleeing and eluding case. The circuit court considered that facts of the

case and, most importantly, that fact that Cecil had violated the probation for that case in order to determine that no set of conditions could mitigate Cecil's willful flight. The record is clear that there were sufficient facts to support the circuit court's conclusion that the State met its burden by clear and convincing evidence.

¶ 15     Based on the foregoing reasons, we will not disturb the circuit court's judgment.

¶ 16                                    CONCLUSION

¶ 17     For the reason stated above, we affirm the judgment of the circuit court.

¶ 18     Affirmed.